In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00220-CR


______________________________




KEITH E. WILDER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 02-0137X




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Keith E. Wilder appeals from his conviction by a jury for aggravated robbery. The
jury assessed his punishment at seventy-five years' imprisonment. On appeal, Wilder
contends his conviction should be reversed because of improper identification procedures
used by police in a photographic lineup, because of allegations of Batson error, because
of an inordinate delay between his arrest and trial, because the evidence was insufficient
to prove he used a deadly weapon, and because the evidence was legally and factually
insufficient to support a conclusion he was the actor in the robbery.

 The evidence shows that a black male entered a convenience store, went behind
the counter while brandishing a machete, and ordered the clerk to "move back or I will kill
you." He could not figure out how to open the cash register and used the machete to pry
it open. He took money from the machine and ran out of the building. A passerby, Tonya
Sickles, saw him run from the store and suspected a robbery. She saw him get into a two-tone pickup truck parked beside a closed liquor store next door to the crime scene and
followed him for some time while contacting the police, giving them a detailed description
of the vehicle. The police caught up with the truck, and its occupant ran away. Inside the
truck, officers found money scattered about, a green machete, and a hat and shirt.

 The owner of the pickup truck, Delta Hatton, testified Wilder (her cousin) worked for
her in her lawn service business. She testified he had borrowed the truck from her,
identified the hat as one she had given him as a gift, and also identified the machete as
one of the tools used in her business.

 The robbery occurred October 29, 2001. A photographic lineup was created by
police which was shown to the store clerk October 30, and in which she identified Wilder
as the robber. Wilder was caught and arrested in Longview January 9, 2002. An
indictment was returned against him for this robbery April 23, 2002, and trial was
conducted in mid-November 2002. 

 We first address Wilder's complaint about the photographic lineup. He argues the
court erred by denying his motion to suppress the in-court identification of him as the
robber because the witnesses had been tainted through police use of suggestive
identification procedures. He does not specify how the photographic lineup might have
been improper, but argues generally that the witnesses had only a short period of time to
observe the robber and that, because his features were partially obscured by a towel, their
in-court testimony was not believable. 

 An in-court identification is inadmissible when it has been tainted by an
impermissibly suggestive pretrial photographic identification. The test is whether,
considering the totality of the circumstances, "the photographic identification procedure
was so impermissibly suggestive as to give rise to a very substantial likelihood of
irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968); see
Madden v. State, 799 S.W.2d 683, 695 (Tex. Crim. App. 1990). Reliability is the critical
question:

 [I]f the totality of the circumstances reveals no substantial likelihood of
misidentification despite a suggestive pretrial procedure, subsequent
identification testimony will be deemed "reliable," "reliability [being] the
linchpin in determining the admissibility of identification testimony." 


Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999), quoting Webb v. State, 760
S.W.2d 263, 269 (Tex. Crim. App. 1988).

 In this case, there is no indication of any reason why the photographic lineup might
be considered suggestive. The testimony shows that the lineup was presented the next
day to the clerk and to the police officer who stopped the vehicle, and that both individuals
picked Wilder out of the lineup. The lineup itself is a series of similar photographs of
similarly built and attired young black men with similar hairstyles and facial features. 

 The issue as set out by counsel is whether the witnesses saw the person clearly
enough to be able to later identify him. They both testified they recognized him. The clerk
testified that she had met Wilder earlier and that she recognized his facial features despite
the cloaking of the towel. As they actually made physical contact while he was robbing the
store, she was able to see him at close range, and she testified Wilder was the robber. 
The police officer testified he saw Wilder as Wilder got out of the pickup truck and ran
away, and the officer had a clear, well-lighted view of Wilder for several seconds while this
was occurring, at a fairly close distance.

 The question of the strength of this testimony was for the jury to determine. The
mere fact Wilder's face was partially covered during part of the robbery does not nullify the
witnesses' ability to nonetheless identify him. The contentions of error are overruled.

 Wilder next contends his constitutional rights were violated by the improper striking
of black jurors by the State. In Batson v. Kentucky, 476 U.S. 79 (1986), the United States
Supreme Court held that the state's purposeful use of peremptory challenges in a racially
discriminatory manner violated the Equal Protection Clause of the Fourteenth Amendment
to the United States Constitution. A Batson review involves a three-step analysis. Williams
v. State, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996). The first step requires the
complaining party to make a prima facie case of racial discrimination. Id., citing Purkett v.
Elem, 514 U.S. 765, 767-69 (1995). A prima facie case of discrimination may be made by
showing that the totality of the relevant facts gives rise to an inference of discriminatory
purpose. Batson, 476 U.S. at 93-96. After the complaining party makes his or her prima
facie case, the second step requires that the proponent of the challenge come forward with
a race-neutral reason for the strike. Williams, 937 S.W.2d at 485. This second step does
not demand an explanation that is persuasive, or even plausible. Purkett, 514 U.S. at 768. 
If the proponent of the strike can produce a race-neutral reason, then in the third and final
step, the trial court must decide whether the opponent of the strike has proved purposeful
racial discrimination. Id.; Ford v. State, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999).

 In reviewing a Batson challenge, we review the record in the light most favorable to
the trial court's rulings and determine if the court's action was clearly erroneous. Williams
v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991); see Roberts v. State, 963 S.W.2d
894, 899-00 (Tex. App.-Texarkana 1998, no pet.).

 In this case, the State struck two African-American members of the venire. Defense
counsel objected. The State then explained that it struck the first juror because the district
attorney had prosecuted one of his relatives and that it struck the second because he was
unemployed. Those reasons are race-neutral. The contention of error is overruled.

 Wilder further contends the trial court erred by overruling his motion to dismiss for
lack of a speedy trial. Extended governmental delay in prosecuting entitles a defendant
to relief based on the right to a speedy trial. Doggett v. United States, 505 U.S. 647
(1992); Barker v. Wingo, 407 U.S. 514, 530-31 (1972). If a violation of the speedy trial
right is established, the only possible remedy is dismissal of the prosecution. Strunk v.
United States, 412 U.S. 434, 440 (1973).

 In determining whether an accused has been denied his or her right to a speedy
trial, a court must use a balancing test "in which the conduct of both the prosecution and
the defendant are weighed." Barker, 407 U.S. at 530. The factors to be weighed in the
balance include, but are not necessarily limited to, the length of the delay, the reason for
the delay, the defendant's assertion of his or her speedy trial right, and the prejudice to the
defendant resulting from the delay. Id. No single factor is necessary or sufficient to
establish a violation of the right to a speedy trial. Id. at 533; Dragoo v. State, 96 S.W.3d
308, 313 (Tex. Crim. App. 2003).

 The first Barker factor, the length of the delay, is measured from the time the
defendant is arrested or formally accused. Dragoo, 96 S.W.3d at 313. Wilder was
arrested January 9, 2002, while already incarcerated in Gregg County on other charges. 
He was formally indicted April 23, 2002, and jury selection began November 12, 2002.

 The time from arrest to trial was ten months. That suggests an inordinate delay
between the commencement of proceedings and trial. Zamorano v. State, 84 S.W.3d 643,
649 n.26 (Tex. Crim. App. 2002); Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App.
1992) (recognizing courts generally hold any delay of eight months or longer presumptively
unreasonable and triggers speedy trial analysis).

 The second factor is the reason for the delay. In its response to a motion to dismiss
for lack of a speedy trial, the State pointed out that the district attorney's office in Harrison
County underwent a change in staff as a result of the March 2002 Democratic primary. 
There was, as acknowledged by the trial court, a scarcity of district attorneys to try the
case. As described by the trial court, there was a changeover in the prosecutor's office,
leaving only one prosecutor available on a full-time basis. The explanation is based on the
resources of the Harrison County prosecution system. Barker discusses three categories
of delay: 1) deliberate attempts by the prosecution to delay the trial in order to hamper the
defense are weighed heavily against the prosecution; 2) more neutral reasons, such as
negligence by the state, or overcrowded dockets, are weighed less heavily against the
prosecution, but are still weighed against the state because the ultimate responsibility for
these circumstances lies with the state, not the defendant; and 3) valid reasons for delay,
such as a missing witness. Barker, 407 U.S. at 531. 

 Although a finding of "bad-faith delay" renders relief almost automatic, a finding of
mere negligence will not become "automatically tolerable simply because the accused
cannot demonstrate exactly how it has prejudiced him." Zamorano, 84 S.W.3d at 649.

 This reflects neither bad faith nor negligence. It does reflect the existence of a
situation not caused by the defendant and which must therefore be attributed to the State. 

 The record also reflects that Wilder was facing charges in Gregg County at the
same time and that it was necessary to coordinate this prosecution with that of the
neighboring county. In connection with that situation, the record shows: Wilder had been
transferred to the Gregg County jail during that time period; after Wilder returned in May
to Harrison County, the court had no jury trials in August; the June-July docket had been
set in March and April; the court began setting cases again in September; by September,
there was the above-mentioned "scarcity" of district attorneys to try the case. Thus, for at
least a portion of that time, Wilder was in the custody of a different entity and thus could
not be tried by Harrison County without being brought back to that location. We hold the
reasons offered by the State for the delay between Wilder's indictment and trial are neutral
and weigh less heavily than if they were intentional against the State. See State v. Munoz,
991 S.W.2d 818, 822 (Tex. Crim. App. 1999); Russell v. State, 90 S.W.3d 865, 872 (Tex.
App.-San Antonio 2002, pet. ref'd).

 The third factor is the assertion of the right to a speedy trial. Assertion of this right
is a weighty factor in the Barker balancing test. See Barker, 407 U.S. at 531-32; Schenekl
v. State, 996 S.W.2d 305, 312 (Tex. App.-Fort Worth 1999), aff'd, 30 S.W.3d 412 (Tex.
Crim. App. 2000). Although a defendant's failure to assert his or her speedy trial right does
not amount to a waiver of that right, "failure to assert the right . . . make[s] it difficult for a
defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532. This is
so because a defendant's lack of a timely demand for a speedy trial indicates strongly that
he or she did not really want a speedy trial and that the defendant was not prejudiced by
lack of one. Dragoo, 96 S.W.3d at 314. Wilder filed a motion for speedy trial October 31,
2002. Thus, the right was asserted.

 The final Barker factor to consider is prejudice to the accused. We make this
assessment in light of the interests of defendants which the speedy trial right was designed
to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the accused's
anxiety and concern; and (3) to limit the possibility that the accused's defense will be
impaired. Barker, 407 U.S. at 532. Of these forms of prejudice, "the most serious is the
last, because the inability of a defendant adequately to prepare his case skews the fairness
of the entire system." Id. 

 Furthermore, with respect to the third interest, affirmative proof of particularized
prejudice is not essential to every speedy trial claim, because "excessive delay
presumptively compromises the reliability of a trial in ways that neither party can prove or,
for that matter, identify." Doggett, 505 U.S. at 655. On the other hand, this "presumption
of prejudice" is "extenuated . . . by the defendant's acquiescence" in the delay. Id. at 658.

 During a large portion of the time in question, Wilder was in a neighboring county's
jail awaiting trial on charges pending in that jurisdiction. Under these circumstances, we
have been directed that we should be mainly concerned with whether an appellant's ability
to defend himself or herself was prejudiced by the delay. Dragoo, 96 S.W.3d at 315-16;
see McCarty v. State, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973). 

 The argument raised by Wilder in this context is that he has adequately shown his
defense in this case was prejudiced by the delay. His argument is focused on an alleged
alibi witness who disappeared between the time of Wilder's arrest and trial. However, the
record does not indicate Wilder could identify that witness, and Wilder knew the witness
only as "James." In that respect, it is equally likely the delay provided more time to locate
an unknown witness.

 The delay itself is on the lower limit of what is considered an excessive time period
for the purpose of a Barker review. This factor weighs against the State. The delay was
attributable to the State, and there is no indication Wilder contributed to that delay in any
manner. Because there are stated reasons for the delay, and the delay was not as a result
of intentional State activity seeking such a delay, that factor also weighs against the State,
although only to a minimal level. Wilder did assert his right to a speedy trial, and there is
no indication his actions contributed to the delay. 

 However, there is no indication of any real level of injury resulting from the delay. 
Wilder was otherwise, and evidently properly, incarcerated during the time period in
question; thus, no harm can be shown from that avenue. His only argument of prejudice
is based on the loss of an unknown alibi witness as described above. 

 In determining whether an accused has been denied his or her right to a speedy
trial, we use a balancing test in which the conduct of both the prosecution and the
defendant are weighed, utilizing the factors set out above. Barker, 407 U.S. at 530. No
single factor is necessary or sufficient to establish a violation of the right to a speedy trial. 
Id. at 533; Dragoo, 96 S.W.3d at 313.

 In conducting that test, on these facts as shown by the record, we cannot conclude
Wilder has shown his right to a speedy trial was violated. The contention of error is
overruled.

 Wilder also contends the evidence is factually and legally insufficient to support the
conviction. In our review of the legal sufficiency of the evidence, we view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In reviewing for factual
sufficiency, we view the evidence in a neutral light, favoring neither party. Id. We set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Id.

 We have previously set out the evidence. There is evidence Wilder threatened the
clerk with death while he was wielding a machete, and Officer Raymond Biard testified that
a machete is a deadly weapon. That is sufficient evidence to allow the jury to reasonably
conclude that a deadly weapon was used in the commission of the crime and that the clerk
was thereby placed in fear of her life. 

 Wilder also suggests the identification evidence was too weak to allow the jury to
conclude he was the perpetrator of the crime. However, the jury heard testimony from the
clerk identifying him as the perpetrator, testimony from the police officer identifying him as
the driver of the getaway vehicle, testimony explaining he was allowed to borrow the truck,
and that items of clothing found in the truck, along with the stolen money, belonged to him. 
We find the evidence both legally and factually sufficient to support the verdict.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: September 19, 2003

Date Decided: September 22, 2003


Do Not Publish



argin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoNoSpacingCxSpFirst, li.MsoNoSpacingCxSpFirst, div.MsoNoSpacingCxSpFirst
 {mso-style-name:"No Spacing\,QuotationCxSpFirst";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoNoSpacingCxSpMiddle, li.MsoNoSpacingCxSpMiddle, div.MsoNoSpacingCxSpMiddle
 {mso-style-name:"No Spacing\,QuotationCxSpMiddle";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoNoSpacingCxSpLast, li.MsoNoSpacingCxSpLast, div.MsoNoSpacingCxSpLast
 {mso-style-name:"No Spacing\,QuotationCxSpLast";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-093-CR%20Maloy%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00093-CR

                                                ______________________________

 

 

                                 DOUDLEY SCOTT MALOY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0819781

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Doudley
Scott Maloy appeals his conviction for aggravated sexual assault of his grandchild
and indecency with the child by sexual contact. 
Maloy brings four points of error contending (1) the trial court erred
in permitting Martha Dykes, a social worker, to testify regarding her interview
with S.M.B. (the child victim), maintaining that Dykes was not the proper
outcry witness as defined by Article 38.072 of the Texas Code of Criminal
Procedure;[1]
(2) the trial court erred in admitting the recorded interview of S.M.B. by
Dykes; (3) the tacit consent of the trial court in allowing interference of the
court proceedings by the district attorneys investigator and the courts
bailiff created an air of sympathy for S.B. (the victims mother) and for S.M.B.,
rising to the level of a silent comment on the weight of the evidence by the court;
and (4) the evidence is legally and factually insufficient to support
conviction.  After reviewing Maloys
points of error, we affirm his conviction.[2]

I.        BACKGROUND

 

            On August 8, 2007, S.M.B.s
parents left her[3] and her
siblings in the care of their grandfather, Maloy, and Maloys mother.  While S.M.B. was playing a video game in
Maloys bedroom, Maloy pulled her shorts aside and licked her in the lower
private area and then licked her and touched her in the higher private area.[4]  After this, Maloy told S.M.B. that she would
like what he just did when she got older.  


            Later that
evening, S.M.B. told her mother, S.B., that Paw-Paw [Maloy] pulled her shorts
and panties to the side and licked her. 
S.B. knew that S.M.B. was talking about her female sexual organ from the
way she talked, because she was kind of shaky and clammy.  She was afraid she would be in trouble.  Upon further questioning of her daughter, S.B.
learned that Maloy had told S.M.B. that Youll like it when youre older.   S.B. went on to relate that S.M.B. had told
her that Maloy then pulled S.M.B.s shirt up and licked her on the breast and
said, Youll also like this.  When S.B.
questioned Maloy about this occurrence, Maloy denied the allegation.[5]  

            After having
confronted Maloy, an argument erupted among family members.  Aaron Hanna, a Hopkins County Sheriffs
deputy, was dispatched to the home, where he took a statement from S.M.B.  Hannas report of the interview indicated that
S.M.B. told Hanna that Maloy pulled her shorts and panties aside and looked at
her. 

            Dykes, a
social worker and forensic interviewer for the Northeast Texas Child Advocacy
Center, conducted an interview with S.M.B. on August 23, 2007.  Dykes was called by the State to testify
about the information she learned upon interviewing S.M.B.[6]  While Dykes never offered in-court testimony
regarding what S.M.B. told her of the events of August 8, 2007,[7]
a video recording of Dykess interview with S.M.B. was admitted into evidence
over Maloys objection and was published to the jury.  The interview contained detailed information
about the events of the day in question.

            Maloy was
tried and convicted by a jury of aggravated sexual assault of a child and was
sentenced to twenty-eight years in the Texas Department of Criminal Justice.  Maloy was also convicted of two counts of
indecency with a child by sexual contact, for which he was sentenced to seven
and four years imprisonment, respectively. 
Each of the three sentences runs concurrently.  Maloy was also charged with two other
offenses[8]
involving S.M.B., of which Maloy was acquitted. 

II.        ANALYSIS

 

            A.       Dykess
Testimony Regarding the Interview With S.M.B.

 

            Maloy
broadly alleges that the trial court erred in allowing Dykes to testify about
her interview with S.M.B.  Maloy did not
dispute that Dykes was the proper outcry witness regarding events that occurred
prior to August 8, 2007 (to which no objection has ever been made by Maloy). We,
therefore, construe Maloys complaint on this issue to be confined to Dykess
testimony pertaining to S.M.B.s statements describing the events of August 8,
2007.

            The first
question propounded to Dykes about the events of August 8 was whether S.M.B.
told her about the allegations against Maloy that occurred on that date.  No objection was made to this query; the
response was simply, Yes, she did.  Dykes
was then asked whether S.M.B. discussed those allegations in some detail.  Once again, there was no objection to the
question and the response was simply, Yes. 
Later, Dykes was asked (in connection with events that occurred prior to
August 8) if she was able to determine if the touching was playful or for
sexual gratification.  In response, Dykes
testified that S.M.B. stated that she did not like what Maloy did, but that he
had made comments that she would like it when she was older.  Upon hearing this testimony, Maloy objected in
relation to the statement that she would enjoy it later on.[9]
The trial court took the objection under advisement, but did not rule on
it.  

            We
review a trial courts decision to admit or exclude evidence under an abuse of
discretion standard.  See Green v. State, 934 S.W.2d 92, 10102
(Tex. Crim. App. 1996); Brown v. State,
189 S.W.3d 382, 385 (Tex. App.Texarkana 2006, pet. refd).  In cases involving certain sex crimes against
children, Article 38.072 of the Texas Code of 
Criminal Procedure provides an exception to the hearsay rule for
testimony by outcry witnesses when specific requirements are met.  See Tex.
Code Crim. Proc. Ann. art. 38.072.  An outcry witness is the first person,
eighteen years of age or older, other than the defendant, to whom the child
victim made a statement about the offense.  Tex. Code
Crim. Proc. Ann. art. 38.072, § 2(a)(3). 


            Maloy
contended at trial and on appeal that Dykes was not a proper outcry witness to
the August 8 events because the childs mother was the first person meeting the
statutory definition of an outcry witness to whom S.M.B. made a statement about
those events.  However, except for one
isolated comment, the testimony elicited from Dykes would not be prohibited by
the hearsay rule if given by her as a nonoutcry witness.  Further, Maloy did not obtain a ruling on his
objection pertaining to this.  In order to
preserve error in admitting evidence, a party must make a proper objection and secure
a ruling on that objection.   See Tex.
R. App. P. 33.1; Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).  To the extent such testimony could be
characterized as outcry testimony, any objections to the propriety of this
testimony were waived when Maloy failed to press to the point of obtaining an
adverse ruling on his objection relating to the events of August 8,
2007.  We find no abuse of discretion in
the admission of the referenced testimony, and therefore overrule this point of
error.

            B. 
Admission of the Recorded Interview 

 

            Maloy further complains that it was error to admit
the video recording of Dykess interview with S.M.B.  Again, Maloy asserts that Dykes was not the
proper outcry witness under Article 38.072 of the Texas Code of Criminal
Procedure because S.M.B. made specific allegations of sexual assault to S.B.
prior to her interview with Dykes.  

            It
is undisputed that S.M.B. made a statement about the incident to her mother, S.B.,
before she ever spoke with Dykes.[10]  The State provided notice that S.B. was the
proper outcry witness regarding the events of August 8, 2007, by filing the
notice required by Article 38.072
of the Texas Code of Criminal Procedure. 
In addition, the State provided notice pursuant to Article 38.072 that
Dykes was the proper outcry witness regarding events occurring prior to August
8, 2007.  The State neither contended at
trial nor on appeal that the video recording of Dykess interview with S.M.B.
was offered as outcry testimony. 
Instead, the recorded interview was admitted as a prior consistent
statement under Rule 801 of the Texas Rules of Evidence, which provides that a
statement is not hearsay if the declarant testifies at trial, is subject to
cross-examination concerning the statement, and the statement is

consistent with the declarants testimony and is
offered to rebut an express or implied charge against the declarant of recent
fabrication or improper influence or motive.

 

Tex. R. Evid.
801(e)(1)(B).

 

            The trial
court relied on Hammons v. State, 239
S.W.3d 798 (Tex. Crim. App. 2007), in concluding that the video recording was
admissible as a prior consistent statement. 
The Texas Court of Criminal Appeals in Hammons explained that:

[A] reviewing court, in assessing whether the
cross-examination of a witness makes an implied
charge of recent fabrication or improper motive, should focus on the purpose
of the impeaching party, the surrounding circumstances, and the interpretation
put on them by the [trial] court.  Courts may also consider clues from the voir
dire, opening statements, and closing arguments.  From the totality of the questioning, giving
deference to the trial judges assessment of tone, tenor, and demeanor, could a
reasonable trial judge conclude that the cross-examiner is mounting a charge of
recent fabrication or improper motive?  If
so, the trial judge does not abuse his discretion in admitting a prior
consistent statement that was made before any such motive to fabricate arose.  

 

Id. at 80809. 

 

            As with most
evidentiary rulings, a trial courts determination that a prior consistent
statement is admissible because the cross-examination suggested or implied an
assertion of recent fabrication or improper motive is reviewed only for an
abuse of discretion.  Id. at 804,
806.  The video recording was permitted
in evidence after the State assured the court that the testimony of the child
victim would be forthcoming.  As a result
of the sequence of introduction of evidence, the trial court was not provided the opportunity to determine whether
cross-examination suggested or implied an assertion of recent fabrication
because the video recording was introduced and published to the jury prior
to the time S.M.B. was cross-examined. 
Defense counsel objected to this chronology of introduction of evidence
as allowing the admission of hearsay, and correctly contended that [I]t is not
a prior consistent statement, because the witness hasnt testified yet . . . .
Hammons explicitly requires a determination by the trial court of
whether the cross-examiner is mounting a charge of recent fabrication or
improper motive.  Id. at 80809.  This determination is aided by the trial courts
assessment of the tone, tenor, and demeanor of the witness, as well as the
totality of the questioning.  Id. 

            The recorded interview between Dykes
and S.M.B. failed to qualify as a prior consistent statement because S.M.B. had
not yet testified at the time the recorded statement was introduced.  We do not condone the procedure employed here
(i.e., the introduction of an alleged prior consistent statement on the promise
of future testimony from the declarant).[11]  By admitting the video recording into
evidence, the trial court allowed evidence into the record that was in
violation of the Texas Rules of Evidence. 
The ruling of the trial court is therefore outside the zone of
reasonable disagreement.  We, therefore,
conclude that the trial court erred by admitting the evidence.  

            Improper admission of hearsay
evidence amounts to nonconstitutional error. 
See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998);
Dunn v. State, 125 S.W.3d 610, 614 (Tex. App.Texarkana 2003, no
pet.).  Any nonconstitutional error which
does not affect substantial rights must be disregarded.  See Tex.
R. App. P. 44.2(b).  We may not
reverse a defendants conviction for nonconstitutional error if, after
examining the record as a whole, we have a fair assurance that the error did
not have a substantial and injurious effect or influence in determining the
jurys verdict.  Garcia v. State,
126 S.W.3d 921, 927 (Tex. Crim. App. 2004). 
In determining harm, we consider everything in the record, including any
testimony or physical evidence admitted for the jurys consideration, the
nature of the evidence supporting the verdict, and the character of the alleged
error and how it might be considered in connection with other evidence in the
case.  Haley v. State, 173 S.W.3d
510, 518 (Tex. Crim. App. 2005).  We note
that S.M.B. testified later in the trial; her testimony essentially mirrored
the information in the recording.  

             In situations where an improperly admitted
video recording essentially repeated the testimony of the victim, when the
victim also testifies and the video recording is cumulative of the victims
properly admitted testimony on the same issue, courts often disregard the
error, reasoning that it could not have affected the appellants substantial
rights.  Dunn, 125 S.W.3d at 615 (citing Jensen v. State, 66
S.W.3d 528, 537 (Tex. App.Houston [14th Dist.] 2002, pet. refd); Matz v.
State, 21 S.W.3d 911, 912
(Tex. App.Fort Worth 2000, pet. refd) (op. on remand).  Such is the case here.  We find that, because S.M.B.s testimony at
trial essentially repeated the statements contained in the recorded
interview, the erroneous admission of the recording does not affect Maloys
substantial rights and amounted to harmless error.  See Tex.
R. App. P. 44.2(b).  This point of
error is overruled.

            C.   Silent Comment on the Weight of the Evidence?

 

            While testifying, S.B. became
very emotional; an investigator with the district attorneys office and the
courtroom bailiff both delivered tissues to her, these taking place without
leave of the court.  Maloy contends that
by permitting this to take place, the trial court made a silent comment on the
weight of the evidence.  Maloy objected
to this alleged display of sympathy or perhaps mere assistance:

Your Honor, I agreed to allow [S.B.] to be helped to the
chair by her husband, but this bringing officers out of - - in order to hand
her tissues and the bailiff handing her tissues is way more prejudicial as to
what it is, and Id ask that, you know, unless theres a specific problem, that
they keep their seat and not become a part of this proceeding.  . . . Id ask the Court to instruct the jury
to disregard.

            

The trial court noted the
objection and determined that because S.B. had a box of tissues, there should
be no further movement; the objection was overruled. 

            Maloy
concedes that the emotions of the witness appeared to be an honest display of
pain and sorrow, and the reactions of the bailiff and the investigator were
genuine displays of empathy.  He
contends, however, that such displays of emotion created an environment that
was hostile to Maloy as being the one person in the room that caused the pain
and sorrow.  Consequently, Maloy
maintains that the courts silence and hence, its tacit approval of such
displays of empathy, could convey to the jury the trial courts opinion of the
testimony offered by S.B.  Said another
way, the failure of the court to intervene and admonish the two to refrain from
further interfering with the proceedings and its failure to instruct the jury
to disregard the display of sympathy could lend credibility to the testimony
offered by S.B.

            Maloy
contends the trial courts ruling amounts to an impermissible silent comment
on the weight of the evidence in violation of Article 38.05 of the Texas Code
of Criminal Procedure. Article 38.05 provides: 

In ruling upon the admissibility of evidence,
the judge shall not discuss or comment upon the weight of the same or its
bearing in the case, but shall simply decide whether or not it is admissible;
nor shall he, at any stage of the proceeding previous to the return of the
verdict, make any remark calculated to convey to the jury his opinion of the
case.  

 

Tex. Code Crim. Proc.
Ann. art. 38.05 (Vernon 1979).  A
trial court improperly comments on the weight of the evidence if it makes a
statement that implies approval of the States argument, that indicates any disbelief
in the defenses position, or that diminishes the credibility of the defenses
approach to its case.  Clark v. State, 878 S.W.2d 224, 226 (Tex. App.Dallas
1994, no pet.). 

            Here, no comments were made by the trial
court.  The court simply overruled an
objection made at the bench outside the hearing of the jury, as it had the
discretion to do.  Under the facts
presented, we decline to interpret the failure to sustain an objection as a comment
on the weight of the evidence.  S.B. was
distraught and wept during her testimony. 
Often, the nature of the matter being tried is filled with sadness and
pain and it would not be unusual or unexpected for a witness in like
circumstances to weep while testifying.  Maloy
complains that the offer of tissues to the weeping witness created an
environment that was hostile to Maloy as being the one person in the room that
caused the pain and sorrow.[12]  Such a conclusion does not withstand logic
and reason.  If any such environment
existed, that environment was not created by the mere offer of tissues.  The fact that a witness is unable to maintain
her composure while relating painful testimony is part and parcel of the nature
of a trial involving emotional circumstances. 
The jury is permitted to judge the credibility of the witness, and will
do so whether or not she weeps or is offered tissue.  The ruling of the trial court was within the
bounds of reasonable disagreement.  We
overrule this point of error.




 

            D.  The Evidence Is Legally and Factually
Sufficient to Support Conviction

 

            In his final point
of error, Maloy contends the evidence is legally and factually insufficient to
support his conviction of aggravated sexual assault and two counts of indecency
with a child by contact.

            We review the legal and factual sufficiency
of the evidence supporting a conviction under well-established standards.  In conducting a legal sufficiency review, we
consider the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We must give deference to the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
31819 (1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  State v. Turro, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993) (en banc).  In
conducting a factual sufficiency review, we consider the evidence in a neutral
light.  Watson v. State, 204
S.W.3d 404, 41415 (Tex. Crim. App. 2006). 

            We may find evidence factually
insufficient in two ways:  (1) the
evidence supporting the conviction is too weak to support the fact-finders
verdict, or (2) considering conflicting evidence, the fact-finders verdict is
against the great weight and preponderance of the evidence. Laster, 275
S.W.3d at 518.  In so doing, we may find
the evidence insufficient when necessary to prevent manifest injustice.  Id.  
Although we give less deference to the verdict in a factual sufficiency
review, we will not override the verdict simply because we disagree with
it.  Id.  Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically-correct
jury charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273
S.W.3d 273, 280 (Tex. Crim. App. 2008).

            Maloy attacks the evidence as being
legally and factually insufficient to support his conviction of aggravated
sexual assault, as alleged in count one of the indictment.  Count one alleges that Maloy caused the
female sexual organ of S.M.B., a child who was younger than fourteen and not
the spouse of the defendant, to contact the mouth of the defendant.[13]  S.B. testified that Maloy pulled S.M.B.s
shorts and panties to the side and licked her.  S.B. further testified that she knew S.M.B.
was referring to her female sexual organ because of the way she talked,
because she was kind of shaky and clammy. 
She was afraid she would be in trouble. 


            We do not consider the testimony of S.B.
in a vacuum, aside from other evidence presented at trial.  In this regard, S.M.B. testified that He
licked me down in the lower private area and then licked me in the higher
private area.  Maloy told S.M.B. she was
going to like it when she got older. 
When asked if private area means the genital area, S.M.B.
unequivocally stated that was the area to which she made reference.  We find this evidence to be both legally and
factually sufficient to support Maloys conviction of aggravated sexual assault
of a child.

            Counts two and three of the
indictment allege that Maloy, with the intent to arouse or gratify the sexual
desire of the defendant, intentionally or knowingly engaged in sexual contact
with S.M.B. by (1) touching the breast of S.M.B. with the defendants mouth;
and (2) touching the breast of S.M.B. with the defendants hand.  While Maloy states in his brief that he
challenges the factual sufficiency of the evidence to support the elements of
the offense of indecency with a child, he fails to explain the basis of this
challenge and does not provide authority in support of this challenge.  

            Rule 38.1(i) of the Texas Rules of
Appellate Procedure requires that the brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record.  Tex. R. App. P. 38.1(i).  Because Maloy has failed to present argument
for his contention that the evidence is factually insufficient with respect to
the convictions based upon indecency with a child, this point of error has not
been adequately briefed.  See id.;
Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996)
(It is incumbent upon counsel to cite specific legal authority and provide
legal argument based upon that authority.).   We overrule Maloys legal and factual
sufficiency points of error.




 

            We affirm the judgment of the trial
court.  

 

 

 

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

 

Date Submitted:          June
30, 2010  

Date Decided:             July
9, 2010

 

Do Not Publish











[1]Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon Supp. 2009).

 





[2]The
initial judgment reflects a finding of guilt on the charge of aggravated sexual
assault of a child.  Tex. Penal Code Ann. § 22.021(a)(2)(b)
(Vernon Supp. 2009); the second and third judgments reflect a finding of guilt
on two separate charges of indecency with a child by sexual contact.  Tex.
Penal Code Ann. § 21.11(a)(1) (Vernon Supp. 2009).  

 





[3]S.M.B.s
date of birth is September 27, 1996.  She
was ten years old at the time of the assault and twelve years old at the time
of trial.  

 





[4]S.M.B.
called the lower private area the genital area, where she uses the
bathroom.  S.M.B. defined the higher
private area as her breast.  

 





[5]During
this testimony, S.B. became very emotional, and the district attorneys
investigator, Ron Mayberry, entered the bar from the gallery to deliver tissues
to her.  At the same time, the courts
bailiff, John Hipkins, walked across the courtroom to hand tissues to S.B.

 





[6]Maloy
objected to the admission of outcry testimony regarding the events of August 8,
2007.  The trial court did not rule on
the objection; Maloy renewed his objection to Dykess testimony with respect to
the events of August 8, 2007.  The court
did not rule on the objection, but took it under advisement.  

 





[7]Dykes
was designated as an outcry witness for two allegations of indecency with a
child by contact that was alleged to have occurred prior to August 8,
2007.  Maloy was acquitted of these
additional charges.  

 





[8]These
had to do with events that occurred prior to August 8, 2007, in which it was
alleged that Maloy touched S.M.B.s breast. 


 

 





[9]This
statement was expressly made in connection with the events of August 8, 2007. 





[10]The
outcry statement made to S.B. is outlined in the previous portion of this
opinion.  





[11]When
asked by the trial court if S.M.B. would testify, the States attorney stated,
I give you my word, she will - - barring something totally unforeseen, but
its my intention to bring her forward tomorrow. 





[12]As
something of an observation, one must wonder if it would evoke a more emotional
response on the part of the jury to have had people bringing the woman tissues
to blot her tears or whether it would have been more heart rending for the jury
to see the tears continue to stream down her cheeks unabated. 





[13]A
person commits the offense of aggravated sexual assault if the person
intentionally or knowingly causes the sexual organ of a child to contact or penetrate
the mouth, anus, or sexual organ of another person, including the actor.  Tex.
Penal Code Ann. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2009).